## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KATHERINE K.[1],
    Plaintiff,

Case No. 1:20-cv-563

Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**ORDER**

Plaintiff Katherine K. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

for judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's application for disability insurance benefits (DIB).  This matter is before the

Court on plaintiff's statement of errors (Doc. 14), the Commissioner's response (Doc. 19), and

plaintiff's reply (Doc. 20).

## I.  Procedural Background

Plaintiff filed her application for DIB in August 2017, alleging disability since January

25, 2017 due to lateral medullary syndrome, hypertension/high cholesterol, vertebral artery

occlusion/stroke, and headaches.  (Tr. 356).  The application was denied initially and upon

reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Thuy-Anh T. Nguyen on August 22, 2019.  Plaintiff and

vocational expert (VE) William Kiger appeared and testified at the hearing.  (Tr. 172-211).  On

November 6, 2019, the ALJ issued a decision denying plaintiff's DIB application.  (Tr. 8-29).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

The Appeals Council denied plaintiff's request for review making the ALJ's decision the final decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since January 25, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: status post cerebrovascular accident, status post implantation of loop recorder, and hypertension (20 CFR 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, and occasionally balancing, stooping, kneeling, crouching, and crawling.  She must avoid concentrated exposure to

3

extreme cold and extreme heat; and avoid all unprotected heights and dangerous machinery.  [Plaintiff] is limited to occasional operation of foot pedals with the left lower extremity; frequent handling, fingering, and feeling with the left upper extremity; and frequent overhead reaching with the left upper extremity.

6. [Plaintiff] is capable of performing past relevant work as a general office clerk, office manager, and administrative assistant.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from January 25, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13-24).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B*., 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D.  Relevant Medical History

In January 2017, plaintiff was hospitalized with a stroke (Tr. 470-71) and underwent a loop recorder placement (Tr. 493).  Plaintiff spent two weeks in a rehabilitation facility following her hospitalization, and upon her discharge, it was noted that she had "progressed well" and "achieved all of the previously set goals."  (Tr. 694).  At an emergency room visit shortly after her discharge from the rehabilitation facility, she complained of dizziness, headache, and hyponatremia.  (Tr. 902).  Plaintiff exhibited instability when standing with her feet together but did not fall.  (Tr. 905).  Her physical examination was otherwise normal including a normal EKG, grossly intact sensation, and equal strength bilaterally in all extremities.  (*Id.*).  In April 2017, plaintiff began physical therapy (Tr. 1408) and progressed by July 2017 to rating pain, dizziness, and fear of falling/imbalance at 2/10 ("Really a lot better.  Able to drive now on highway.") (Tr. 1468).

In May 2017, plaintiff treated with neurologist Blake A. Smith, M.D.  (Tr. 645-47).  Dr. Smith noted slow improvement, including no vertigo in three months, the ability to walk without an assistive device, and no headaches for two to three months, but he also noted persistent left-sided paresthesia.  (Tr. 645).  Plaintiff complained of fatigue, numbness, and tingling.  (Tr. 646).

On physical examination, plaintiff's mental status was normal and she exhibited good strength and tone in all four extremities. (Tr. 646-47). She also reflected left-sided face weakness without dysarthria, minimal left-sided drift, and a mild sway with Romberg. (Tr. 647). At a cardiology evaluation in June 2017, plaintiff reported "doing well" and significant improvement with dizziness. (Tr. 681).

In November 2017, George Lester, Psy.D., performed a consultative examination. (Tr. 1220-1227). Plaintiff's examination was largely normal, but Dr. Lester diagnosed a mild neurocognitive disorder related to her stroke, noting that the diagnosis flowed not from any memory or concentration complaints but rather from "a bit slow performance" on a digits forward subtest of the Mental Status Exam and Serial 3 Task. (Tr. 1225). In December 2017, Dr. Lester administered additional testing, which reflected it was "likely" that plaintiff was "experiencing some mild cognitive deficits which may be intermittent." (Tr. 1241, 1243). Plaintiff's "Processing Speed" ranked in the 42nd percentile. (Tr. 1244).

Also during November 2017, Martin Fritzhand, M.D., performed a consultative examination. (Tr. 1229-35). Dr. Fritzhand noted that plaintiff reported paresthesia and lack of stamina, and he observed a stiff, non-limping gate. (Tr. 1234). Dr. Fritzhand recorded "completely normal" range of motion, a "completely normal" neurological examination, no muscle weakness, good bilateral grasp strength and manipulative ability, and comfort in sitting and supine positions. (Tr. 1234-35). Dr. Fritzhand opined that plaintiff was "capable of performing a *mild* amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects" but "may do best alternating from weight-bearing to sitting position."

6

(Tr. 1235) (emphasis added). Dr. Fritzhand noted plaintiff had no reaching, grasping, handling, visual, or communicative limitations and opined that her "stamina should improve with time." (*Id.*).

Also in November 2017, plaintiff followed up with neurologist Dr. Smith. (Tr. 1236). Plaintiff reported "doing well" and exercising, with improving paresthesia due to acupuncture.[2] (*Id.*). On physical examination, Dr. Smith recorded a normal mental status exam, good strength and normal tone in all four extremities, and plaintiff's ability to walk with mild ataxia. (Tr. 1238). Dr. Smith noted that she was "doing relatively well" and recommended an annual follow up. (*Id.*).

At that annual follow up in November 2018, Dr. Smith noted:

[S]he is overall doing pretty well. [S]he has just increased working to 2 days per week (3 hour shifts). [S]he is pretty fatigued by the end of each shift and can't do back to back days but it is improvement. [S]he is no longer requiring naps in the afternoon which is good. [S]he has been doing craniosacral therapy and acupuncture which has helped some. [S]he just restarted aquatic therapy. [B]alance is improving but not normal. [P]aresthesia on left arm and leg persist. [M]ild weakness left arm and leg.

(Tr. 1317). Dr. Smith recorded a normal mental status examination and a largely normal neurological examination, with the exception of "mild left hemiparesis" that did not affect the strength in her extremities, "mild dysmetria on left compared to right[,]" and "sway with romberg." (Tr. 1319). In his assessment, after noting that her fatigue was improving with therapy, Dr. Smith stated: "[W]hile I would expect some more improvement in stamina [I] am not confident that she would be able to work full time (5 days per week, 8 hours per day).

---

[2] Acupuncture provided plaintiff relief from vertigo and pain and tingling in her left arm and leg. (*See, e.g.,* Tr. 1280, 1295, 1327, 1332, 1334).

[M]any stroke patients are not able to do consecutive days and often require more frequent breaks/shorter shifts." (Tr. 1319). Dr. Smith noted that plaintiff's blood pressure was "very well controlled" and recommended another annual follow up. (Tr. 1320).

In April 2019, plaintiff's primary care office treated plaintiff for a rash. (Tr. 1539). Plaintiff's physical examination at that time did not reflect any neurological or musculoskeletal abnormalities. (Tr. 1544). Two months later, in June 2019, plaintiff's primary care provider, Robert Ellis, M.D., completed a "Stroke Medical Source Statement." (Tr. 1569-72). Dr. Ellis cited clinical findings of "poor stamina, slow to do things, needs to stay focus[ed] when walking[.]" (Tr. 1569). Dr. Ellis opined that plaintiff could walk for 20 minutes without rest, sit for 30 minutes at a time for four hours total in an eight-hour workday, and stand for 30 minutes at a time for four hours total in an eight-hour workday. (Tr. 1570). He stated that plaintiff would need to shift positions and take unscheduled 15 to 30-minute breaks every two hours. (*Id.*). He further opined that moderate-high stress work would aggravate plaintiff's fatigue, plaintiff would be off task 15% of the time, and plaintiff would miss more than four days of work per month. (Tr. 1572). A month after providing the Stroke Medical Source Statement, Dr. Ellis noted that plaintiff continued to complain of fatigue, dizziness, left sided weakness and tingling pain (Tr. 1505), but he observed only "[m]ild weakness on left compared to the right" and no other abnormalities on physical examination. (Tr. 1507).

8

### E.  Specific Errors[3]

Plaintiff argues that the ALJ committed the following errors: (1) she did not consider that plaintiff would miss up to four days of work per month due to acupuncture treatment; (2) she failed to consider plaintiff's fatigue and weakness noted by neurologist Dr. Smith, primary care provider Dr. Ellis, and consultative examiner Dr. Fritzhand or the low to average processing speed recorded by consultative examiner Dr. Lester; (3) as it relates to medical opinion evidence, she failed to give "good reasons" for discounting plaintiff's treating physicians' opinions (Drs. Smith and Ellis), failed to consider that the state agency reviewers on whose opinions she relied had not reviewed the whole record, did not assign appropriate weight to Dr. Fritzhand's opinion, failed to note the specialties attributable to the opining medical sources, and failed to apply a more rigorous review to the state agency reviewers' opinions; (4) she failed to establish a baseline from which to consider plaintiff's improvement in condition; (5) she failed to appropriately consider plaintiff's subjective complaints and testimony by failing to consider plaintiff's consistent treatment and desire to work and improve her condition, cherry picking from plaintiff's activities to exaggerate her daily functioning, and improperly discounting the severity of plaintiff's symptoms based on "conservative" treatments; and (6) she failed to incorporate plaintiff's four missed days of work per month, low to average processing speed, only occasional ability to use left arm, fatigue, weakness, and vision issues into her vocational hypotheticals.

---

[3] The Court organizes these errors slightly differently than the way they are presented in plaintiff's brief.

9

1.    Medical source opinions (error 3)

Plaintiff argues that the ALJ failed to give "good reasons" for discounting plaintiff's treating physicians' opinions (Drs. Smith and Ellis), failed to note that the state agency reviewers on whose opinions she relied had not reviewed the whole record, did not assign appropriate weight to Dr. Fritzhand, failed to note the specialties attributable to the opining medical professionals, and failed to apply a more rigorous review to the state agency reviewing physicians' opinions than to the treating physicians' opinions. The Commissioner responds that plaintiff's arguments are largely premised on an outdated mode of evaluating medical source opinion evidence.[4]

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[5] *Id.* The Commissioner will "not defer or give any specific evidentiary weight,

---

[4] Plaintiff relies on 20 C.F.R. § 404.1527, which governs "[e]valuating opinion evidence for claims filed before March 27, 2017." (*See* Doc. 14 at PAGEID 1669). Plaintiff filed her claim in August 2017. (Tr. 356). Plaintiff makes related obsolete arguments about the ALJ's failure to give "good reasons" and apply a more rigorous review to state agency reviewing physicians' opinions, which are tied to rescinded Social Security Rulings 96-2p and 96-6p. (*See* Doc. 14 at PAGEID 1667-69). *See* 82 Fed. Reg. 15263-64 (March 27, 2017). Plaintiff does not attempt to refute the Commissioner's response citing current law on these arguments. They are without merit.

[5] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[6], including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[7] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in

---

[6] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."
[7] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

11

paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

a. *Dr. Smith*

The ALJ discounted Dr. Smith's opinion that plaintiff could not work full time. (Tr. 22, referring to Tr. 1319 ("[I] am not confident that she would be able to work full time. . . ."). The ALJ found the opinion not persuasive because (1) it was based on speculation about stroke patients generally as opposed to plaintiff specifically, and (2) the issue is one that is reserved to the Commissioner. (Tr. 22). The ALJ was entitled to reject Dr. Smith's opinion for these reasons. While stroke patients generally may have issues maintaining regular employment for the reasons that Dr. Smith cites, his own records reflect plaintiff's good recovery, improvement with her fatigue, and his expectation that her stamina would further increase. (Tr. 1319). The ALJ reasonably found Dr. Smith's opinion was less persuasive as it was not supported by findings specific to plaintiff but to stroke patients in general. *See* 20 C.F.R. § 404.1520c(c)(1).

The ALJ's decision elsewhere notes numerous parts of the medical record inconsistent with Dr. Smith's opinion. *See* 20 C.F.R. § 404.1520c(c)(2). (*See, e.g.,* Tr. 18-20, referring to Tr. 905 (February 2017 emergency room record reflecting ability to move all four extremities, gross and light touch sensation intact, ability to sit and stand), Tr. 645 (May 2017 record from Dr. Smith noting improvements in vertigo, walking, and headaches), Tr. 1464 (July 2017 physical

12

therapy record showing reduction in pain, dizziness, and fear of falling issues to 2/10), Tr. 1234-35 (November 2017 consultative examination recording "completely normal" range of motion, a "completely normal" neurological examination, no muscle weakness, good bilateral grasp strength and manipulative ability, and comfort in sitting and supine positions despite a stiff gait), Tr. 1238 (November 2017 neurology record noting good strength in all four extremities and ability to walk despite mild ataxia), Tr. 1317-1320 (November 2018 neurology record noting improvement, benefit from therapy,[8] and generally good motor/neurological findings except for mild left hemiparesis, mild dysmetria on left comparted to right, and sway with Romberg)).

Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(1) ("[Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work]" suggest a particular disability determination, which is an issue reserved to the Commissioner). *See also Warner v. Comm'r of Soc., Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.")) (brackets omitted).[9] The ALJ's decision to discount Dr. Smith's opinion is supported by substantial evidence.

---

[8] The ALJ also noted, specifically, plaintiff's improvement with acupuncture. (Tr. 20).

[9] In her reply, plaintiff disagrees that it is inappropriate for medical sources to opine about a plaintiff's ability to work a full workweek. (See Doc. 20 at PAGEID 1715) ("Completing a form which indicates that a person cannot work 40 hours a week is not a determination of disability. . . ."). Plaintiff, however, misreads the Commissioner's argument to refer to Dr. Ellis's check-box opinion when, in fact, the Commissioner critiqued Dr. Smith's opinion on this point. (See Doc. 19 at PAGEID 1708). Moreover, plaintiff seems to assume that Dr. Ellis's opinion about missing more than four days of work per month is the same as an opinion that she cannot work 40 hours per week. (*See* Doc. 20 at PAGEID 1716). While this assumption may not be inconsistent with Dr. Ellis's opinion, he does not specifically give this opinion; Dr. Ellis states only that plaintiff is "exhausted" at the end of her shifts and is capable of low stress work. (*See* Tr. 1569-72).

b. *Dr. Ellis*

The ALJ was also not persuaded by Dr. Ellis's opinion. Dr. Ellis opined that plaintiff

could sit and stand up to 30 minutes each for a total of four hours each in an eight-hour workday,

would need unscheduled breaks every two hours for 15-30 minutes, would be off task 15% of the

time, and would be absent from work more than four days per month. (Tr. 22, referring to Tr.

1569-72). The ALJ found that the opinion was not supported because Dr. Ellis's own medical

records did not include the "clinical findings" that he cited in support of the limitations he

included on the Stroke Medical Source Statement form. (*Id.*, referring to Tr. 1572 and noting

that Dr. Ellis's treatment records did not show poor stamina, slowness in doing things, or a need

to stay focused while walking). *See* 20 C.F.R. § 404.1520c(c)(1). The ALJ further remarked

that Dr. Ellis's opinion was generally inconsistent with plaintiff's treatment record, which

reflected minimal abnormal physical examination findings and overall improvement. *See* 20

C.F.R. § 404.1520c(c)(2). (Tr. 22-23, referring to Tr. 1319 (November 2018 neurology follow-

up reflecting improvements), Tr. 1579 (July 2017 cardiology follow-up reflecting a normal

physical examination)). *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015)

(finding the discounting of a physician's opinion was appropriate where proposed limitations

"conflicted with other substantial evidence in the record"). The ALJ's decision finding Dr.

Ellis's opinion not persuasive is supported by substantial evidence.

c. *Dr. Fritzhand*

Plaintiff also disagrees with the ALJ's assessment of the November 2017 opinion of

consultative examiner Dr. Fritzhand. (Tr. 21-22). Dr. Fritzhand opined that plaintiff was

"capable of performing a *mild* amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects" but "may do best alternating from weight-bearing to sitting position." (Tr. 1235) (emphasis added). The ALJ noted that Dr. Fritzhand examined plaintiff once, not in a treating capacity and relatively shortly after her stroke. (Tr. 22). *See* 20 C.F.R. § 404.1520c(c)(3) ("Relationship with the claimant" factor). The ALJ also noted that the term "mild," as used by Dr. Fritzhand, is vague and not vocationally defined. (Tr. 22). *See* Program Operations Manual System, DI 25001.001.[10] Dr. Fritzhand's terminology does not allow a practical comparison against the other medical opinions in the record on plaintiff's physical functionality. When discussing Dr. Fritzhand's opinion, the ALJ noted that—alongside his proposed limitations (to the extent "mild" communicates any particular degree of limitation)—he noted no issues in reaching, grasping, handling objects, vision, or communication and he expected her stamina to improve. (Tr. 21-22, referring to Tr. 1235). This reflects that the ALJ considered the supportability of the opinion. *See* 20 C.F.R. § 404.1520c(c)(1). As noted with respect to Dr. Smith's opinion, the ALJ's decision elsewhere lays out numerous inconsistencies with finding restrictions on plaintiff's physical functional abilities. *See* 20 C.F.R. § 404.1520c(c)(2); *supra* pp. 12-13.

Also in support of her argument related to Dr. Fritzhand's opinion, plaintiff points to *Moeller v. Comm'r of Soc. Sec.*, 489 F. App'x 868 (6th Cir. 2012), in which the court evaluated an ALJ's decision relying on an opinion by Dr. Fritzhand that the plaintiff was limited to a "mild amount of sitting, standing, [*and*] ambulating. . . ." *Id.* at 870. Notwithstanding the fact that the

---

[10] *See* Medical and Vocational Quick Reference Guide, https://secure.ssa.gov/poms.nsf/lnx/0425001001 (last visited December 17, 2021) (not listing "mild" among relevant vocational terms).

ALJ in *Moeller* assigned Dr. Fritzhand's opinion "significant probative weight[,]" the ALJ

limited plaintiff's standing and walking abilities to only two hours a day but limited his sitting

ability to six hours per day.  *Id.*  The term "mild" itself was not at issue in *Moeller*; rather, the

Sixth Circuit found error in the inconsistency between the ALJ's reliance on Dr. Fritzhand's

opinion, which limited sitting, standing, and ambulating equally, and the ALJ's residual

functional capacity (RFC), which limited these abilities differently.  *Id.  Moeller* has no bearing

on the ALJ's consideration of Dr. Fritzhand's opinion in this case.

Plaintiff also makes the following argument in a single sentence of her brief: "Dr.

Fritzhand is entitled to more weight than the paper reviewing doctors from the State Agency. . .

." (Doc. 14 at PAGEID 1668).  To the extent this argument is not waived,[11] there is nothing

inherently objectionable about giving state agency medical reviewers or consultants greater

weight than other sources.  *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from your medical sources."); *Reeves v.

Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) ("[A]n ALJ may provide greater

weight to a state agency physician's opinion when the physician's finding and rationale are

supported by evidence in the record.").  The ALJ noted that the opinions of state agency medical

consultants Drs. March, Freedman, and Lancaster[12] were consistent with each other and

supported by evidence in the record of improvement in plaintiff's condition.  (Tr. 21, referring to

---

[11] *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

[12] Dr. Bolz did the initial review and only limited plaintiff to medium work (Tr. 225-26); the ALJ relies on the other opinions, which reduced plaintiff to light work.  (Tr. 21, 243-45, 1311-13).

Tr. 1238 (November 2017 Dr. Smith record referring to improvement in condition), Tr. 1248

(January 2018 recording showing normal physical examination at a cardiology follow-up)).[13]

(*See also* Tr. 233-38 (reflecting evidence considered at the reconsideration level), Tr. 243-44

(Dr. March's opinion), Tr. 1311-13 (Drs. Freedman and Lancaster's concurring opinions)).  The

ALJ's decision to discount Dr. Fritzhand's opinion is supported by substantial evidence.

### d.  *Other medical source opinion errors*

Plaintiff also argues that the ALJ erred by failing to consider the relative specialties of

the state agency physicians versus Dr. Smith, a neurologist.  The ALJ was not required to discuss

this consideration in her opinion.  20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required

to, explain how we considered the factors in paragraphs (c)(3) through (c)(5). . . .").[14]

Plaintiff finally argues that the state agency reviewing physicians did not review the full

treatment record (i.e., 2018 and 2019 records of Drs. Smith and Ellis), and relying on the state

agency opinions therefore constitutes error.  "There is[,]" however, "no categorical requirement

that the non-treating source's opinion be based on a 'complete' or 'more detailed and

comprehensive' case record."  *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th

Cir. 2011).  As discussed above, the opinions of Drs. March, Freedman, and Lancaster are

supported by and consistent with the evidence in the record.  Moreover, the "fatigue, weakness,

and left sided paresthesia[]" that plaintiff argues were not considered as a consequence of not

---

[13] Plaintiff only challenges the ALJ's evaluation of medical sources pertaining to plaintiff's physical impairments. Therefore, plaintiff has waived any challenges to the ALJ's review of medical sources pertaining mental impairment.  *See Kuhn*, 709 F.3d at 624.

[14] Explicit consideration of these factors is required only if "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same. . . ."  20 C.F.R. § 404.1520c(b)(3).

reviewing Drs. Ellis and Smith's records (*see* Doc. 14 at PAGEID 1668) *were* considered by the state agency reviewers and consultants. (*See* Tr. 235, 240 (Disability Determination Explanation at the Reconsideration level noting Dr. Lester's observations of fatigue, low stamina, and tingling/physical discomfort)). The ALJ's consideration of Drs. March, Freedman, and Lancaster's opinions is supported by substantial evidence.

The ALJ's consideration of the medical source opinions related to plaintiff's physical impairments is based on substantial evidence. This assignment of error is overruled.

2.     <u>Other evidence in the record (errors 1-2, 4)</u>

Plaintiff argues that the ALJ failed to consider evidence in the record that would have influenced the determination of her RFC. Plaintiff first argues that the ALJ failed to take into account plaintiff's weekly therapies, including acupuncture, which would cause her to miss more than four days per month of work. Plaintiff has failed, however, "to set forth any facts or medical opinions which demonstrate that [s]he requires physical therapy on a rigid schedule that would conflict with h[er] ability to work" or "any reason to think that [s]he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on some other schedule." *Pryor v. Comm'r of Soc. Sec.*, No. 14-13325, 2015 WL 12683977, at *7 (E.D. Mich. Aug. 21, 2015), *report and recommendation adopted*, 2015 WL 6735336 (E.D. Mich. Nov. 4, 2015). Without such information, plaintiff has failed in her burden to show evidence in support of her disability claim. *See* 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled."). The ALJ's failure to find that plaintiff would miss more than four days of work per month due to weekly therapies is supported by substantial evidence.

Plaintiff also argues that the ALJ failed to consider plaintiff's fatigue and weakness noted by consultative examiner Dr. Fritzhand, neurologist Dr. Smith, and primary care provider Dr. Ellis; and the low to average processing speed (42nd percentile) recorded by consultative examiner Dr. Lester.  In fact, the ALJ noted plaintiff's fatigue and weakness that was both discussed at the hearing (Tr. 17) and observed by Dr. Smith in November 2017 (Tr. 19, acknowledging plaintiff's report of "low energy").  The ALJ discussed plaintiff's consultative examination with Dr. Fritzhand; and while she did not specifically note plaintiff's reported lack of stamina (Tr. 1234), she did note that Dr. Fritzhand found "no evidence of muscle weakness" (Tr. 19, referring to Tr. 1235).

Also pertaining to fatigue and weakness, the ALJ noted that plaintiff demonstrated improvement in her ability to work and need to nap daily at her November 2018 visit with Dr. Smith.  (Tr. 20, referring to Tr. 1317).  Plaintiff asserts that this was an improper consideration because she improved to *only* working *up to* six hours per week as opposed to a full workweek. In support of this argument, however, plaintiff cites *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488 (6th Cir. 2011).  In *Boulis-Gasche*, the ALJ determined that a vague and unspecified improvement in plaintiff's mood noted on two pages of a 55-page treatment record meant that the plaintiff's anxiety and depression had subsided.  *Id.* at 493.  In context, the record that the ALJ relied upon to show an improvement in mood actually showed an improvement in side effects of psychotropic medications.  *Id.  Boulis-Gasche* does not compel the conclusion that the ALJ here was required to accept plaintiff's subjective report regarding her ability to work. The ALJ carefully explained the progression of plaintiff's condition (Tr. 17-20) and

19

appropriately considered her limitations and consistent improvement. The ALJ's RFC determination is based on substantial evidence.

Finally, the ALJ specifically noted plaintiff's processing speed score (Tr. 19, referring to Tr. 1244) and assessed plaintiff with a mild limitation in concentrating, persisting, or maintaining pace. (Tr. 15). Plaintiff complains that the ALJ did not consider the fact that doing her past relevant work would not allow for reductions in speed or workload. Plaintiff does not, however, point to any medical evidence, medical opinion evidence, or even her own testimony that would suggest that a mild limitation in concentrating, persisting, or maintaining pace would impact her RFC. The ALJ's decision not to incorporate limitations based on processing speed was based on substantial evidence. The assignments of error related to other evidence in the record (errors 1-2, 4) are overruled.

3.    Subjective complaints (error 5)

Plaintiff next argues that the ALJ failed to properly evaluate plaintiff's subjective complaints of fatigue, weakness, issues using a computer, and vision issues. ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g., Rogers*, 486 F.3d 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination

of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016)

(rescinding and superseding SSR 96-7p). To avoid such mistaken emphasis, this analysis is now

characterized as the "consistency" of a claimant's subjective description of symptoms with the

record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing

*Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record

contains objective medical evidence of an underlying medically determinable impairment that

could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL

1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469,

475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's

symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine

the extent to which the symptoms limit an individual's ability to perform work-related activities.

*See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this

determination, the ALJ will consider the following:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence of symptoms unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).[15]

The ALJ here considered the fact that plaintiff received "conservative care[,]" including minimal medications, annual neurology visits, and six-month cardiology visits. (Tr. 20). *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), (v) (listing medication and non-medication treatments as factors relevant to consideration of a claimant's symptoms). While plaintiff alludes to the fact that more aggressive care for her symptoms/conditions was not available, plaintiff provides no evidence that this is the case, and the Court is not persuaded that the ALJ's consideration of plaintiff's limited treatment and medication was inappropriate. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 725 (6th Cir. 2013) (holding that the fact of conservative treatments supported the ALJ's RFC determination).

---

[15] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility." With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference. Sixth Circuit decisions subsequent to SSR 16-3p, however, have retained the notion of deference to the ALJ in the symptom-consistency context, though they have not directly acknowledged the change. *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements."); *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 340 (6th Cir. 2018) ("[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.") (quoting *Jones*, 336 F.3d at 475); *Mason v. Comm'r of Soc. Sec.*, No. 17-2407, 2018 WL 6133750, at *2 (6th Cir. Apr. 30, 2018) (same).

The ALJ also noted plaintiff's exercise regimen, work schedule, and varied daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i); (Tr. 20, citing Tr. 1492 (less than one year after her stroke, plaintiff was walking most days, using a recumbent bike and light hand weights a few times a week, doing water aerobics weekly), Tr. 1317, 1505 (describing plaintiff's three hour/two times per week part-time work schedule), Tr. 198-99 (plaintiff's testimony regarding daily cooking, exercising, chores, and regular grocery shopping and visits with her grandson). The ALJ properly considered this evidence and testimony to evaluate plaintiff's alleged symptom severity. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)) ("[T]he ALJ properly considered [the plaintiff's ability to perform day-to-day activities] as one factor in determining whether [the plaintiff's] testimony was credible.").

Plaintiff suggests that the ALJ cherry-picked from her testimony to support her RFC determination, omitting any reference to the alleged increased time needed for plaintiff to do daily activities, assistance from her husband, issues with computer use, and trouble reading. For support, however, plaintiff relies on a case in which the ALJ had painted the plaintiff as capable worker based on an unreasonable reading of a snippet from a mental health intake report— ignoring other parts of that same report listing a myriad of significant mental health symptoms (e.g., hallucinations and obsessions) and diagnosing major depressive and panic disorders. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). The Sixth Circuit concluded that the ALJ's RFC in *Howard* was not supported by substantial evidence because it did not accurately portray his abilities. *Id.* at 241. The record in *Howard* is a far cry from the record in

this case, which reflects an individual experiencing lingering mild stroke symptoms but also continual improvement.  Plaintiff's testimony itself hedges on the question of fatigue, noting that it was an issue "early on" (Tr. 192) and that she questioned her ability to work additional hours "right now" (Tr. 193); neither comment suggests that her fatigue was not actually improving, which is consistent with medical source opinions that contemplated continued improvement in fatigue (*see* Tr. 1235 (Dr. Fritzhand), Tr. 1319 (Dr. Smith)).

Plaintiff faults the ALJ for failing to consider plaintiff's alleged vision issues, but she testified that her "vision is fine."  (Tr. 187).  Plaintiff also points to the ALJ's failure to discuss her alleged limitations on the computer.  (*See* Tr. 197 (plaintiff's testimony that she could use the computer 30 minutes at a time up to two hours per day)).  The ALJ noted, however, that plaintiff lost her office-manager position post-stroke because of funding issues and not performance issues.  (Tr. 20, referring to Tr. 353 (termination letter from Beth Adam); Tr. 183 (plaintiff's testimony that this position involved computer work)).  *See* 20 C.F.R. § 404.1529(c)(3)(vii).

Finally, the ALJ's RFC reflects consideration of environmental factors consistent with plaintiff's testimony.  (*See* Tr. 16 ("must avoid concentrated exposure to extreme cold and extreme heat"), Tr. 191 ("Q. Is there anything that causes [left-sided pain and tingling] to worsen? A. Cold, extreme cold weather, hot weather. . . .").  20 C.F.R. § 404.1529(c)(3)(iii).

In sum, the ALJ evaluated plaintiff's subjective symptoms consistent with 20 C.F.R. § 404.1529(c)(3).  Error 5 is overruled.

4.      Vocational questions (error 6)

Plaintiff last argues that the ALJ erred by failing to incorporate missing more than four days of work monthly, her low to average processing speed, and her limited left-side functionality into the vocational hypotheticals. "It is well established[,]" however, "that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). As explained above, the decision of the ALJ to not incorporate more than four missed days of work monthly and low to average processing speed is supported by substantial evidence. *See supra* pp. 18, 20. As it pertains to plaintiff's complaints of limited left-sided functionality, the ALJ's hypothetical specifically contemplates left-sided issues. (Tr. 202 (ALJ describing her first hypothetical as "the occasional operation of foot pedals with the left lower extremity and frequent handling, fingering and feeling with the left upper extremity, with frequent reaching overhead with the left upper extremity.")). *See* 20 C.F.R. § 1529(c)(3)(ii) (The ALJ will consider "[t]he location, duration, frequency, and intensity of your pain or other symptoms.").

Plaintiff also references the medical-vocational guidelines (Grid) as supporting a finding that she is disabled. Plaintiff points to the testimony of the VE regarding the ALJ's third hypothetical (Tr. 202 (hypothetical limiting plaintiff to "occasional handling, fingering and feeling with the left upper extremity and the occasional reaching overhead with the left upper extremity")). Because the VE testified that plaintiff could perform no past work and would have

26

no transferable skills under that third hypothetical, plaintiff argues that she is disabled under the Grid. *See* 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.06. Again, however, the ALJ was required to incorporate only "those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235. Plaintiff points to no evidence in the record that would compel incorporation of the limitations reflected in the ALJ's third hypothetical into plaintiff's RFC. The ALJ's consideration of the VE's testimony in formulating plaintiff's RFC is based on substantial evidence. Error 6 is overruled.

      **IT IS THEREFORE ORDERED THAT** the decision of the Commissioner is **AFFIRMED** and this case is **CLOSED** on the docket of the Court.

Date:  1/7/2022

Karen L. Litkovitz
United States Magistrate Judge

27